LAW OFFICES OF ANDRES Z. BUSTAMANTE
ANDRES Z. BUSTAMANTE (BAR NO. 147025)
634 S. Spring Street, Suite 910
Los Angeles, CA 90014
E-Mail    blaw.abz@sbcglobal.net
Telephone:  (213) 891-9009
Facsimile:  (213) 627-1655

JANET SHERMAN, ESQ. (BAR NO. 98560)
SHERMAN & SHERMAN
A Professional Law Corporation
2115 Main Street
Santa Monica, CA  90405-2215
E-Mail    JanetSher@aol.com
Telephone:  310/399-3259
Facsimile:  310/392-9029

Attorneys for Claimant,
David Antonio Felix-Tavizon

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  CV 09-7571-AHM (MANx) |
| Plaintiff, | **JOINDER IN MOTION TO DISMISS WITH PREJUDICE AND OPPOSITION TO RELEASE OF RES TO STATE AUTHORITIES; EXHIBIT** |
| vs. | |
| $1,030,645.00 U.S. CURRENCY, | |
| Defendant. | Date:    June 14, 2010 |
| | Time:    10:00 a.m. |
| | Ctrm:    Hon. A. Howard Matz |
| DAVID ANTONIO FELIX-TAVIZON, | |
| Claimant. | |

Claimant, David Antonio Felix-Tavizon, hereby joins in the Motion to Dismiss this Action with Prejudice, but opposes the government's request that, upon dismissal, the defendant currency be surrendered to the Los Angeles District Attorney's Office, Asset Recovery Program for forfeiture under state law.

The grounds for this Opposition are that the return of the property is required by 28 U.S.C. § 2465; that any further attempt to forfeit this property is

barred by res judicata; that it would be an abuse of this Court's jurisdiction to aid a forfeiture that violates the Fourth Amendment; that the state's seizure warrant is a nullity because, inter alia, this Court has prior exclusive jurisdiction over the res; that the case on which the state relies to prosecute the same forfeiture that is barred in this forum was wrongly decided; and that, under Fed. R. Civ. P. 41, the transfer of the property to the state upon dismissal would be improper.

Claimant therefore respectfully requests that the Court enter the requested dismissal with prejudice and return the property to claimant as prayed for in his Answer to the government's Complaint.

Dated:   May 21, 2010          Respectfully submitted,

                               LAW OFFICES OF ANDRES Z. BUSTAMANTE
                               ANDRES Z. BUSTAMANTE

                               JANET SHERMAN
                               SHERMAN & SHERMAN
                               A Professional Law Corporation


                    By:   /s/ Janet Sherman
                          _____
                          JANET SHERMAN
                          Attorneys for Claimant
                          David Antonio Felix-Tavizon

- ii -

1

# **TABLE OF CONTENTS**

2

**Page No.**

3
Memorandum of Points and Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4
I.      Statement of Relevant Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5
II.     Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6
        A.      Res Judicata Prevents the State as a Privy of the
7              Federal Government from Seeking Forfeiture after
               this Case Is Dismissed with Prejudice. . . . . . . . . . . . . . . . . . . . . . . 4

8
        B.      This Court Is Bound by Supreme Court and Circuit
               Precedent That Requires the Suppression of the
9              Evidence and Cannot Assist a Constitutional
               Violation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10
        C.      The State's Initiation of Forfeiture Proceedings Is
11             Ineffective since this Court Had Prior Exclusive
               Jurisdiction over the Property That Was Within its
12             Custodia Legis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

13
        D.      The Conclusion from $241,600 on Which the State
14             Relies Is a Wrongly Decided Judicial "Orphan," an
               Opinion That Has Nothing in its Lineage and No
15             Progeny. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        E.      Releasing the Property to the State Would Be
16             Improper under Rule 41, Fed. R. Civ. P.. . . . . . . . . . . . . . . . . . . . 22

17
III.    Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

### FEDERAL CASES

**Page No.**

3
AMAE v. California,
    231 F.3d 572 (9th Cir.2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

4

5
Almeida-Sanchez v. United States,
    413 U.S. 266 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

6
Austin v. United States,
    509 U.S. 602 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

7

8
Bernard v. City of Palo Alto,
    699 F.2d 1023 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

9
Boyd v. United States,
    116 U.S. 616 (1886). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

10

11
Cromwell v. County of Sac,
    94 U.S. 351, 24 L. Ed. 195 (1877). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

12
Dickerson v. United States,
    530 U.S. 428 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

13

14
Donovan v. City of Dallas,
    377 U.S. 409 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15
G.M. Leasing Corp. v. United States,
    429 U.S. 338 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

16

17
Gerstein v. Pugh,
    420 U.S. 103 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18
Hagan v. Lucas,
    35 U.S. (10 Pet.) 400 (1836). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

19

20
Hamilton v. State Farm Fire & Casualty Co.,
    270 F.3d 778 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

21
John Bacall Imports Ltd. v. United States,
    412 F.2d 586 (9th Cir. 1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

22

23
Kona Enterprises, Inc. v. Estate of Bishop,
    229 F.3d 877 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

24
Lawlor v. National Screen Service Corp.,
    349 U.S. 322, 75 S. Ct. 865, 99 L. Ed. 1122 (1955). . . . . . . . . . . . . . . . 5

25

26
Marshall v. Barlow's Inc.,
    436 U.S. 307 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

27
Montana v. United States,
    440 U.S. 147 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

28

One 1958 Plymouth Sedan v. Pennsylvania,
        380 U.S. 693 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 17, 18

Palmer v. Texas,
        212 U.S. 118 (1909). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Penn. General Casualty Co. v. Commonwealth  of Pa.,
        294 U.S. 189 (1935). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Pizzarello v. United States,
        408 F.2d 579 (2d Cir.) (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Princess Lida of Thurn and Taxis v. Thompson,
        305 U.S. 456 (1939). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Savina Home Industries, Inc. v. Secretary of Labor,
        594 F.2d 1358 (10th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . 20

Schimmels v. United States,
        127 F.3d 875 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

Schnell v. Peter Eckrich & Sons. Inc.,
        365 U.S. 260 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Schwarz v. Folloder,
        767 F.2d 125 (5th Cir.1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

State Engineer of the State of California, at al. v.
South Fork Band of theTe-Moak Tribe of Western
Shoshone Indians of Nevada, et al.,
        339 F.3d 804 (9th Cir 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Stepmann v. City and County of San Francisco,
        557 F.2d 1338 (9th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. $25,000,
        2003 WL 22159054, *5 (N.D. Cal., Sept. 16, 2003). . . . . . . . . . . . . 13

United States v. $80,180.00 in U.S. Currency,
        303 F.3d 1182 (9th Cir.2002). . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. $186,416.00 in U.S. Currency,
        590 F.3d 942 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 3, 12, 20

United States v. $191,910.00 in U.S. Currency,
        16 F.3d 1051 (9th Cir.1994). . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

United States v. $493,850.00 in U.S. Currency,
        518 F.3d 1159 (9th Cir.2008). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. $506,231,
        125 F.3d 442 (7th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Bagley,
    765 F.2d 836 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. ITT Rayonier, Inc.,
    627 F.2d 996 (9th Cir.1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. James Daniel Good Real Property,
    510 U.S. 43 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United  States v. Janis,
    428 U.S. 433 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

United States v. McCormick,
    502 F.2d 281 (9th Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 21

United States v. One 1971 Harley Davidson Motorcycle,
    508 F.2d 351 (9th Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. One 1985 Cadillac,
    866 F.2d 1142 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Real Property at 22249 Dolorosa Street,
    167 F.3d 509 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Real Property Located at 475 Martin Lane,
Beverly Hills, CA,
    545 F.3d 1134 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Spetz,
    721 F.2d 1457 (9th Cir.1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Western Systems. Inc. v. Ulloa,
    958 F.2d 864 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Yardas v. United States,
    899 F.2d 550 (6th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Zenith Insurance Co. v.Breslaw,
    108 F.3d 205 (9th Cir.1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

**STATE CASES**

Abelleira v. District Court of Appeal,
    17 Cal. 2d 280 (1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Automobile Equity Sales, Inc. v. Superior Court,
    57 Cal. 2d 450 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Baltimore v. 1995 Corvette,
    119 Md. App. 691 [706 A.2d 43] (1998). . . . . . . . . . . . . . . . . . . . . . . . . 17

Emslie v. State Bar,
    11 Cal. 3d 210 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Gikas v. Zolin,
        6 Cal. 4th 841 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Lake County Mental Health Department v. Susan T.,
        8 Cal. 4th 1005 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

One 1995 Corvette v. City Mayor and City Council of Baltimore,
        353 Md. 114, 724 A.2d 680 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

People v. $17,522.08 United States Currency,
        142 Cal. App. 4th 1076 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

People v. $241.600,
        67 Cal. App. 4th 1100 (1998). . . . . . . . . . . . . . . . . . . . . 4, 16, 11, 18, 21, 22

People v. One 1960 Cadillac Coupe,
        62 Cal. 2d 92 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

People v. Superior Court (Moraza),
        210 Cal. App. 3d 592 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Wells v. California Home Loan Solutions,
        2007 WL. 2915059 (S. D. Cal. Oct 04, 2007). . . . . . . . . . . . . . . . . . . . . . . . . 8

**FEDERAL STATUTES**

18 U.S.C. §981. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 14

18 U.S.C. § 983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 2232. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 2465. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

Fed. R. Civ. P. 4l. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

U.S. Const. Art. VI, ¶ 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**STATE STATUTES**

Cal. Penal Code §1534. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF RELEVANT FACTS

On May 2, 2009, claimant David Antonio Felix-Tavizon passed through a DUI cheek point that was being operated by officers of the Azusa Police Department in the City of West Covina.  When asked for his identification, Mr. Felix produced a valid Mexican driver's license.  Felix explained to the officers that he had been in the United States on vacation and was staying in West Covina. He added that he would be returning to Mexico, but might remain in the United States for another month.

Based on his lack of a California driver's license, the officers who had stopped him cited him for driving without a license, California Vehicle Code § 12500, and had the vehicle impounded pursuant to Vehicle Code § 14602.6, which authorizes the police to arrest the driver and impound his vehicle when he has been found to be driving without a license.

Vehicle Code § 12500(a), however, provides that a driver need not have a California license if he is expressly exempted under the Vehicle Code.  Mr. Felix was expressly exempted.  As set forth in Vehicle Code § 12502(a), "a nonresident over the age of 18 years having in his or her immediate possession a valid driver's license issued by a foreign jurisdiction of which he or she is a resident," may operate a motor vehicle in California without obtaining a California driver's license.  Mr. Felix was not a resident of the state.  As provided by Vehicle Code § 12505(a)(1), "residency shall be determined as a person's state of domicile. 'State of domicile' means the state where a person has his or her true, fixed, and permanent home and principal residence and to which he or she has manifested the intention of returning whenever he or she is absent."  Mr. Felix indicated he was a Mexican citizen who was vacation in the state and planned to return to Mexico

within the next month.  The officers lacked any legal basis to cite Mr. Felix or impound the car he was driving.

Nonetheless, the officer who stopped Mr. Felix immediately began an inventory search and discovered a large plastic box that contained U.S. currency. According to Jerry Willison, the affiant for the state seizure warrant attached as Exhibit A to the government's motion to dismiss, it was at this point that a narcotics investigation began.  Officer Willison explains that he is both a peace officer with the Azusa Police Department and an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18 of the United States Code.  At the time of the seizure in this case he had been assigned to the DEA as a task force officer in the Southern California Drug Task Force, "which consists of federal agents from the DEA, FBI, ICE and ATF, as well as federally deputized state police officers.

The investigation of this case was thus conducted by both state and federal agencies and cross-assigned state officers with federal jurisdiction.

The Azusa Police Department later released the defendant currency to the United States to commence federal forfeiture proceedings.  Had the forfeiture been successful, the Azusa Police Department would have received a large share of the forfeited property based upon the assistance and resources they provided in the underlying investigation. According to the U.S. government's equitable sharing policy, "[a]ny state or local law enforcement agency that directly participates in an investigation or prosecution that results in a federal forfeiture may request an equitable share of the net proceeds of the forfeiture."  See U.S. Dep. Of Justice, Guide to Equitable Sharing for State and Local Law Enforcement Agencies at p. 3. Most sharing is the result of joint investigations, and sharing requests must be submitted within 60 days after the seizure or within 60 days after the federal adoption of a state or local seizure.  Id. at 10.  As the seizing agency, the Azusa Police Department stood to receive up to 80% of any forfeiture obtained by the

1   federal government in this case.  United States v. $186,416.00 in U.S. Currency,

2   590 F.3d 942, 953 (9th Cir. 2010).

3         On October 19, 2009, the United States filed a complaint for forfeiture.  Mr.

4   Felix filed his claim and demand for jury trial on November 30, 2009 and, on

5   December 17, 2009, he answered the government's complaint.  As his fifth

6   affirmative defense to the forfeiture, he alleged, "The seizure of the defendant

7   properties was based on an unlawful stop and unlawful searches and seizures by

8   state and/or federal authorities in violation of the Fourth, Fifth, Sixth and

9   Fourteenth Amendments to the United States Constitution."

10        On February 22, 2010, this Court set a hearing date on claimant's motion to

11  suppress evidence.  That date was continued several times so that the parties could

12  complete their on-going discussions regarding disposition of this case.  In

13  discussing the filing of the claimant's motion to suppress evidence at the

14  conference of counsel required by Local Rule 7-3, claimant brought it to the

15  attention of the government that the search of Mr. Felix and the evidence gathered

16  as a result of that search were the fruits of a Fourth Amendment violation.  It is in

17  recognition of this fact that on May13, 2010  the government moved to dismiss its

18  forfeiture action with prejudice.  The government has, however, attached a

19  California state seizure warrant to its motion that is dated April 20, 2010.  On the

20  basis of this warrant, it claims that this Court should release the property to state

21  officials, rather than acknowledge that the dismissal order it seeks is a judgment

22  on the merits that requires return of the property to claimant.

23        Claimant agrees that a dismissal with prejudice is appropriate.  Claimant,

24  however, strenuously disagrees that it is appropriate for this court to do anything

25  other than return the property to claimant, 28 U.S.C. §2465(a)(1), and protests, in

26  particular, that it is both unreasonable and unlawful to transfer the property to

27  California for state forfeiture proceedings.  This is particularly true when the

28  putative ground for this motion is that California allegedly does not recognize the

1   application of the Fourth Amendment to forfeiture cases. <u>People v. $241.600</u>, 67

2   Cal. App.4th 1100, 1113 (1998) (stating its distaste for the exclusionary rule, and

3   holding in dicta, contrary to controlling federal authority and the California State

4   Supreme Court, that the rule was not applicable to the civil forfeiture before it).

5         Of course, this Court is not bound by the California Court of Appeal.

6   Rather, it is bound by the United States Supreme Court, <u>One 1958 Plymouth</u>

7   <u>Sedan v. Pennsylvania</u>, 380 U.S. 693, 702 (1965), and the decisional law of this

8   Circuit, <u>United States v. $191,910.00 in U.S. Currency</u>, 16 F.3d 1051, 1063 (9th

9   Cir.1994), superseded by statute on other grounds as stated in <u>United States v.</u>

10  <u>$80,180.00 in U.S. Currency</u>, 303 F.3d 1182, 1184 (9th Cir.2002).   As these cases

11  have held, either the government can proceed with evidence untainted by the

12  Fourth Amendment violation or it must give the property back to the claimant

13  from whom it was seized.  Because the government cannot do so in this case, the

14  money must be returned with interest to Mr. Felix and not diverted to the State of

15  California, which claims on the basis of a single ill-decided case, that it is not

16  bound by the federal Constitution.

17                              **II.**

18                        **ARGUMENT**

19  **A.**     **<u>Res Judicata Prevents the State as a Privy of the Federal Government</u>**

20           **<u>from Seeking Forfeiture after this Case is Dismissed with Prejudice</u>**

21        It is black-letter law that a plaintiff's dismissal with prejudice is tantamount

22  to a judgment on the merits. <u>Zenith Ins. Co. v.Breslaw</u>, 108 F.3d 205, 207 (9th

23  Cir.1997), abrogated on other grounds by <u>AMAE v. California</u>, 231 F.3d 572 (9th

24  Cir.2000) (<u>en banc</u>).  As an <u>in rem</u> proceeding to settle title to property, civil

25  forfeitures "are generally considered proceedings 'against all the world.'"  <u>United</u>

26  <u>States v. Real Property Located at 475 Martin Lane, Beverly Hills, CA</u>,  545 F.3d

27  1134, 1144 (9th Cir. 2008) (citing <u>Restatement (Second) of Judgments</u> § 6 cmt. a

28  (1980)).  "In this type of proceeding, the court undertakes to determine **all claims**

1  **that anyone has to a thing in question**." <u>Id</u>. This conclusion is reinforced by 28

2  U.S.C. § 2465(a)(1), which provides that "Upon the entry of a judgment for the

3  claimant in any proceeding to condemn or forfeit property seized or arrested under

4  any provision of Federal law-- such property shall be returned forthwith to the

5  claimant or his agent."  Because the dismissal with prejudice operates as a

6  judgment in claimant's favor, the return of the property is required.

7          In addition, a dismissal with prejudice is subject to the usual rules of res

8  judicata[1] and is effective not only on the immediate parties, but also on the parties'

9  privies. Wright and Miller, <u>Federal Practice and Procedure</u>, § 2367 at 319-20

10  (1995).

11          Under res judicata, a final judgment on the merits bars further claims by

12          parties or their privies based on the same cause of action. <u>Cromwell v.</u>

13          <u>County of Sac</u>, 94 U.S. 351, 352, 24 L. Ed. 195 (1877); <u>Lawlor v.</u>

14          <u>National Screen Service Corp.</u>, 349 U.S. 322, 326, 75 S. Ct. 865, 867,

15          99 L. Ed. 1122 (1955); 1B J. Moore, <u>Federal Practice</u> ¶ 0.405[1], pp.

16          621-624 (2d ed. 1974) (hereinafter 1B Moore); <u>Restatement (Second) of</u>

17          <u>Judgments</u> § 47 (Tent. Draft No. 1, Mar. 28, 1973) (merger); id., § 48

18          (bar).

19  <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979).

20          Inasmuch as the purpose of the doctrines of res judicata and collateral

21  estoppel is to foster reliance on judicial action, conserve judicial resources,

22  preclude the relitigation of matters that have had a full and fair hearing and protect

23  adversaries from the expense and vexation attending multiple lawsuits, "[t]hese

24  _____

25          [1] The test for whether a subsequent action is barred by res judicata is

26  whether it arises from the same "transaction, or series of transactions" as the

27  original action. Whether two events are part of the same transactions depends on
    whether they are related to the same set of facts and could conveniently be tried

28  together. <u>Western Systems. Inc. v. Ulloa</u>, 958 F.2d 864, 871 (9th Cir. 1992).

1   interests are similarly implicated when nonparties assume control over litigation in

2   which they have a direct financial or proprietary interest and then seek to

3   redetermine issues previously resolved." Id. at 153-54.

4        By precluding both parties and their privies from contesting matters as to

5   which there has already been a judgment on the merits, Schimmels v. United

6   States, 127 F.3d 875, 881 (9th Cir. 1997), the "doctrine of privity" extends the

7   conclusive effect of a judgment to nonparties who are in privity with parties in an

8   earlier action. Id.; United States v. ITT Rayonier, Inc., 627 F.2d 996, 1003 (9th

9   Cir.1980).   "Privity," for the purposes of applying the doctrine of res judicata, is a

10  legal conclusion "designating a person so identified in interest with a party to

11  former litigation that he represents precisely the same right in respect to the

12  subject matter involved." Id.  Accordingly,

13       the persons for whose benefit and at whose direction a cause of action

14       is litigated cannot be said to be "strangers to the cause. . . . [O]ne who

15       prosecutes or defends a suit in the name of another to establish and

16       protect his own right, or who assists in the prosecution or defense of an

17       action in aid of some interest of his own . . . is as much bound . . . as he

18       would be if he had been a party to the record."

19  Id. (quoting Souffront v. Compagnie des Sucreries, 217 U.S. 475, 486-487, 30 S.

20  Ct. 608, 612, 54 L. Ed. 846 (1910)); Schnell v. Peter Eckrich & Sons. Inc., 365

21  U.S. 260, 262 n.4 (1961).

22       Privity precludes a non-party from relitigating a matter under the doctrine of

23  res judicata when the non-party's interests were represented adequately by a party

24  in the original suit. Id.  "[P]rivy" may include those whose interests are

25  represented by one with authority to do so. ITT Rayonier, 627 F.2d at 1003.

26  Privity has been clearly established in this case.  There was an "express or implied

27  legal relationship by which parties to the first suit are accountable to non-parties

28  who file a subsequent suit with identical issues," and the relationship is such that

1    there is a "substantial identity" between the party and nonparty, such that the

2    nonparty "had a significant interest and participated in the prior action," and the

3    interests of the nonparty and party are "so closely aligned" as to be "virtually

4    representative." Schimmels, 127 F.3d at 883; Montana, 440 U.S. at 154-55.

5         As Officer Williston's Affidavit admits, the defendant currency was seized

6    as part of a "joint investigation" among both federal and state law enforcement

7    officers.  Although the property was transferred to the federal government for

8    forfeiture, the state agency that initially made the seizure, the Azusa Police

9    Department, was entitled to submit a formal request for "equitable sharing" of any

10   successful forfeiture based on its participation in the investigation leading to the

11   seizure.  As the investigators and witnesses on behalf of the federal forfeiture with

12   a clear financial stake in its outcome, the State and the Azusa Police Department

13   are clearly bound by the judgment on the merits in this case.

14        In Schimmels, the Ninth Circuit held that, based on the involuntary

15   dismissal of a private party's qui tam case, which also represented the interests of

16   the United States government, res judicata barred any further action by the

17   government based on the  same transactions because the government was aware of

18   and tacitly participated in the case, and was the real party in interest. 127 F.3d at

19   882. In fact, the government held its own potential proceeding in abeyance for

20   over a year, presumably awaiting the outcome of the relators' action. Id. at 882

21   n.15.  The court rejected the government's claim that its interests in recovering a

22   share of the qui tam judgment diverged from the interests of the relators, and

23   found that there was a unity of interest between the relators and the government,

24   which, like the State in this forfeiture, was to share any recovery in the qui tam

25   action. Id. at 882-83.[2]  The Court reiterated that a dismissal acts as a judgment on

26

27        _____

28        [2] The Court further admonished the government, stating that "[i]n an attempt
     to 'hedge its bets,' the government, in effect, violated the very rationale

the merits for the purposes of res judicata.  Id. at 884; see also Zenith Ins. Co., 108 F.3d at 207; Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 877, 889 (9th Cir. 2000); Schwarz v. Folloder, 767 F.2d 125, 130 (5th Cir.1985); Wells v. California Home Loan Solutions, 2007 WL 2915059, *4 (S. D. Cal. Oct 04, 2007).

In this forfeiture case, the joint investigation between the federal government and the state law enforcement agencies, and the latter's equitable sharing interests, establish that the United States and the state were in privity in seeking forfeiture of the defendant seized property.  Consequently, the dismissal with prejudice of the federal forfeiture proceeding constitutes res judicata, barring the state from bringing any forfeiture action in state court based on the same seizure.

**B.      This Court is Bound by Supreme Court and Circuit Precedent that Requires the Suppression of the Evidence and Cannot Assist a Constitutional Violation**

Both the State and the government have acknowledged that there was a Fourth Amendment violation in this case.  Yet, the State has indicated that it intends to seek forfeiture on a basis that is unconstitutional under controlling federal precedent.  Inasmuch as the federal and state governments are seeking the aid of this Court's jurisdiction to aid a Fourth Amendment violation, the Court must refuse to grant the state's request to transfer the funds to state officials and, must instead, return the property to claimant.

The government's asserted authority for dismissing its case in favor of state proceedings is based on 18 U.S.C. § 981(e), which provides that the government may seek dismissal of a complaint in "favor of forfeiture proceedings under State or local law," and in such a case, "may transfer custody or possession of the seized

underlying the doctrine of res judicata.  It spawned duplicative litigation; it wasted the court's resources; and, more importantly, its actions undermined the idea of the finality of judgment."  Schimmels, 127 F.3d at 883.

property to the appropriate State or local official immediately upon the initiation of the proper action by such officials." 18 U.S.C. §981 (e).  While invoking this provision, however, the government is mischaracterizing its actions.

First, the complaint was not dismissed in favor of State forfeiture proceedings. It was only after claimants' attorney spared the government protracted litigation on the calendared suppression motion by bringing to the attention of the government attorney that the defendant property and subsequently obtained evidence were the fruits of an illegal seizure that the government determined that it would discontinue forfeiture proceedings.  Thus, the dismissal of the complaint not only was not "voluntary,"[3] it has also not been requested in favor of forfeiture proceedings under State or local law.  The complaint was dismissed solely because the Fourth Amendment had been violated and the government knew that it could not proceed and would continue to incur attorney's fees under CAFRA if it persisted with an action that was founded on an illegality.

---

[3] Although Fed. R. Civ. P. 4l(a) is titled "Voluntary Dismissal," government counsel has acknowledged that she is requesting dismissal of the action because "the United States Attorney's Office has determined that a federal forfeiture action against this asset may no longer be possible due to the circumstances surrounding the arrest of David Antonio Felix and the subsequent discovery of the targeted currency."  Williston Affidavit at ¶ 4.  The requested dismissal is required by law and thus is "involuntary" and not by free choice.

The government's simultaneous recognition that the forfeiture is barred by the Fourth Amendment and its position that it can seek to aid the state to perpetrate the same forfeiture that it has concluded is unlawful is truly disingenuous.  Accordingly, judicial estoppel should apply to prevent the government from attaining the result it seeks. See Hamilton v. State Farm Fire & Cas. Co., 270 F. 3d 778, 782 (9th Cir. 2001) (judicial estoppel serves not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of "general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings," and to "protect against a litigant playing fast and loose with the courts").

While section 981(e) may promote comity between sovereigns under other circumstances, its invocation in this case is an improper attempt to excuse illegal police conduct.

To avoid the unconstitutional result the government proposes, section 981(e) must be read in light of the Fourth Amendment, which is the supreme law of the land.  U.S. Const. Art. VI, ¶ 2. Both Congress and the states may only legislate within the confines of the federal Constitution. Dickerson v. United States, 530 U.S. 428, 437 (2000); United States v. McCormick, 502 F.2d 281, 285-86 (9th Cir. 1974) ("no Act of Congress can authorize a violation of the Constitution.").[4]  Upon the discovery that the Fourth Amendment has been violated and that the exclusion of evidence tainted by the violation will bar the government from obtaining forfeiture of the defendant property, the government no longer has the statutory authority to take any action that is inconsistent with the Constitution or that would fail to give its provisions their full legal effect.

The attempt to hand the case off to state authorities is nothing more than blatant attempt to have its cake and eat it too.  While recognizing that it cannot proceed because its evidence is barred by the Fourth Amendment, the government is trying to avoid the constitutional violation that has occurred by passing the property off to the state, which relies on a 12-year-old case that has never been

_____

[4] Under the government's specious theory, the government and the claimant could spend years litigating a federal forfeiture action, and if it appeared that the claimant might prevail, the federal government could then simply dismiss the case and turn the property over to state authorities for the institution of state forfeiture proceedings years later, causing egregious consequences to the claimant. Such conduct cannot have been envisioned by Congress in enacting CAFRA. Contrary to the government's suggestion, there is absolutely no evidence that Congress intended to provide an "escape clause" to help the government in such situations. Forfeitures are disfavored under the law.  United States v. $191,910, 16 F. 3d 1051,1069 (9th Cir. 1994).  Accordingly, the burden on the government to adhere to procedural rules is heavier than on claimants. Id. at 1069.

followed, $241,600, 67 Cal. App. 4th at 1113.  This attempt by the government should be taken for what it is, a bold-faced determination to make an end run around the Fourth Amendment and preserve a case that it has been forced to acknowledge cannot constitutionally go forward.  Accordingly, there is nothing voluntary about the government's request for dismissal.

Furthermore, the evidence clearly shows that neither the federal government nor the Azusa Police Department had any interest in seeking state forfeiture proceedings until after the government concluded that a forfeiture in this case would be unconstitutional.  Thus, as the affidavit of Jerry Williston openly admits, the sole motivation for obtaining a state seizure warrant was the fact that the federal government intended to dismiss the case with prejudice.  As Judge Pregerson found in a case where the government had failed to timely file its forfeiture complaint, the government is not free to undo a statutory, let alone a constitutional, violation through the expedient of shifting a case to state authorities:

> The Court cannot agree, however, with the government's characterization of its conduct as discontinuing forfeiture proceedings in favor of state or local proceedings. The government was not in the midst of the usual process involving seized civil properties when it made the decision to "discontinue" proceedings.
>
> After the initial seizure the D.E.A. and [local police] agreed the proceedings would be handled by the D.E.A....  Prior to Ms. Sherman finding the filing error, there were no efforts at the state or local level to pursue the forfeiture.  Although the government characterizes its conduct as voluntarily discontinuing or declining proceedings, a more accurate description is that the government made a... mistake, which was

1   potentially fatal to all future efforts to civilly seize the property in
2   question.
3   United States v. $215,271 in U.S. Currency, CV 01-09812-DDP (July 16, 2002) at
4   11, attached hereto as Exhibit A.
5        As in this case, the local police only took interest in state forfeiture of the
6   property and the government only made the decision to hand the property over
7   when the government realized that its own attempt to effect the forfeiture would
8   be barred.  The only difference is that in $215,271, the government dismissed the
9   case and turned over the property before the claimants had filed a claim and
10  answer.  Nonetheless, Judge Pregerson, who still had in rem jurisdiction over the
11  property notwithstanding the dismissal, determined that the transfer was improper.
12       Because the present case was founded on inadmissible evidence, the
13  government lacked probable cause at the time it initiated its forfeiture,
14  $186,416.00, 590 F.3d at 954;United States v. $493,850.00 in U.S. Currency, 518
15  F.3d 1159, 1169 (9th Cir.2008), and its complaint was every bit as defective as the
16  late-filed complaint in $215,271 that was subject to the CAFRA "death penalty"
17  under 18 U. S. C. § 983(a)(3)(B).
18  **C.    The State's Initiation of Forfeiture Proceedings Is Ineffective Since this**
19  **       Court Had Prior Exclusive Jurisdiction over the Property That Was**
20  **       Within its Custodia Legis**
21       Both at the time that the state obtained the seizure warrant on April 20, 2010
22  and to the present time, this Court's in rem jurisdiction over the property in the
23  possession of the U.S. Marshal[5] is exclusive and precluded the state court's
24  attempt to assert jurisdiction over the res.  Penn. Gen. Cas. Co. v. Commonwealth
25
26  _____
27       [5] Property held by the U.S. Marshals Service in forfeiture cases is on behalf
     of the Court, not on behalf of the U.S. Attorney's Office. Yardas v. United States,
28   899 F. 2d 550, 553 (6th Cir. 1990).

1  of Pa., 294 U.S. 189, 195 (1935) (court which first assumes in rem jurisdiction

2  over property that is subject of filing retains jurisdiction to the exclusion of other

3  courts); see also United States v. $506,231, 125 F.3d 442, 448 (7th Cir. 1997);

4  United States v. $25,000, 2003 WL 22159054, *5 (N.D. Cal., Sept. 16, 2003);

5  United States v. One 1985 Cadillac, 866 F.2d 1142, 1145 (9th Cir. 1989).  Under

6  the "ancient and oft-repeated... doctrine of prior exclusive jurisdiction... when a

7  court of competent jurisdiction has obtained possession, custody, or control of

8  particular property, that possession may not be disturbed by any other court." State

9  Engineer of the State of California, at al. v. South Fork Band of the Te-Moak

10 Tribe of Western Shoshone Indians of Nevada, et al., 339 F.3d 804, 809 (9th Cir

11 2003) (quoting 14 Wright and Miller, Federal Practice and Procedure, § 3631, at 8

12 (3d ed. 1998).

13     "This principle was definitively incorporated into American law long ago:...

14 'If a court of competent jurisdiction, Federal or state, has taken possession of

15 property, or by its procedure has obtained jurisdiction over the same, such

16 property is withdrawn from the jurisdiction of the courts of the other authority as

17 effectually as if the property had been entirely removed to the territory of another

18 sovereignty.'"  Id. [emphasis in original], quoting Palmer v. Texas, 212 U.S. 118,

19 125 (1909).  "Although the doctrine 'is based at least in part on consideration of

20 comity and prudential policies of avoiding piecemeal litigation, it is no mere

21 discretionary abstention rule. Rather, it is a mandatory jurisdictional limitation.'"

22 Id. [internal citations omitted].  See also Donovan v. City of Dallas, 377 U.S. 409,

23 412 (1964); Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 466

24 (1939); Hagan v. Lucas, 35 U.S. (10 Pet.) 400, 403 (1836).

25     In the present action, the United States instituted this in rem forfeiture

26 action and perfected jurisdiction over the defendant property through service of

27 process long before the state purported to execute a seizure warrant to reacquire

28 the property that it had already transferred to federal authorities for forfeiture.

– 13 –

Because it conflicts with the jurisdiction of this Court over the res under the doctrine of prior exclusive jurisdiction, the state court lacks jurisdiction and its seizure warrant can have no legal effect.[6]

Just as the state court seizure warrant purporting to confer jurisdiction on itself was ineffective, the government cannot meet the statutory requirements to release the property to the state based on that order.  As 18 U.S.C. § 981(e) clearly provides any turnover must take place "<u>immediately</u> upon the initiation of the proper action by such officials." 18 U.S.C. §981(e) [emphasis added].  In this case, the requested hand-off of the property to state and local officials would not be "immediate," nor was a "proper" action initiated.

First, the seizure warrant signed by a state judge on April 20, 2010 was void and a nullity because it was issued at the time this federal court still retained prior exclusive jurisdiction over the res in this in rem forfeiture case. <u>Penn General</u>, 294 U.S. at 195; <u>$506.231.00</u>, 125 F. 3d at 448.  On November 5, 2009, the warrant for the arrest of the defendant property in rem was returned in this Court, thus giving it exclusive jurisdiction over the property.  The Warrant had ordered the United States Marshals Service to detain the defendant currency in its custody "until further notice of the Court."  Because the forfeiture action has yet to be dismissed and this Court has not relinquished its jurisdiction, the government had no ability

---

[6] The State's attempt to seize the property for itself also appears to violate 18 U.S.C. §  2232(b), which provides: "Whoever, knowing that property is subject to the in rem jurisdiction of a United States court for purposes of civil forfeiture under Federal law, knowingly and without authority from that court, destroys, damages, wastes, disposes of, transfers, or otherwise takes any action, or knowingly attempts to destroy, damage, waste, dispose of, transfer, or otherwise take any action, for the purpose of impairing or defeating the court's continuing in rem jurisdiction over the property, shall be fined under this title or imprisoned not more than 5 years, or both."

to lawfully and "immediately" transfer custody and possession of the seized property to the state.  It is thus unable to comply with section 981(e).

Second, the April 20, 2010 state seizure warrant expired ten days after its issuance.  Cal. Penal Code §1534.  Thus, the State warrant expired on April 30, 2010 before the government filed its motion to dismiss and without this Court having taken any action to dismiss the case with prejudice.  Consequently, the state warrant, which remains unexecuted, is void by its own terms.

Third, there is a one-year statute of limitations for the state to initiate a forfeiture that runs from the date of the seizure, Cal. H & S Code § 11488.4(a), which in this case was May 2, 2009.  Even if the state has filed a forfeiture petition, as to which there is no evidence, such a petition would necessarily be ineffective based on this Court's prior exclusive jurisdiction.  Any attempt to now file a petition would violate the statute of limitations and would, therefore, be unable to confer the state court with jurisdiction.

**D.** **The Conclusion from $241,600 on which the State Relies Is a Wrongly Decided Judicial "Orphan," an Opinion that has Nothing in its Lineage and No Progeny**

While a violation of the Fourth Amendment should preclude a state court forfeiture with equal force as it would a federal forfeiture proceeding, the state seeks jurisdiction on the basis of dicta[7] in 12-year-old Court of Appeal case from

---

[7] The claimant in $241,600 asserted that he had standing as a forfeiture claimant despite the fact that he had executed a waiver and disclaimer of any interest in the money.  The question raised by the case was whether the claimant had standing to be a forfeiture claimant because he had disclaimed an interest previously.  The trial court found that he lacked standing and granted summary judgment for the plaintiff.  The Court of Appeal reversed the grant of summary judgment.  It was only when the court went on to address whether there might be some other basis for summary judgment that it discussed the application of the Fourth Amendment's exclusionary rule.  This holding by the Court of Appeal was not necessary to a resolution of the standing question.

Riverside County that has never been followed.  People v. $241,600, 67 Cal. App.4th 1100 (1998).[8]  The case misreads federal law, ignores controlling California Supreme Court precedent and muddles its analysis.

Certainly, the most significant flaw in the opinion in $241,600 is that it conflicts with decisional law of the California Supreme Court.  In People v. One 1960 Cadillac Coupe, 62 Cal.2d 92, 96-97 (1964), the High Court of the State expressly applied the exclusionary rule to a civil forfeiture.[9]  Responding to the People's allegation that the case was civil in nature, the California Supreme Court responded:

> Whatever the label which may be attached to the proceeding, it is apparent that the purpose of the forfeiture is deterrent in nature and that there is a close identity to the aims and objectives of criminal law enforcement.  On policy the same exclusionary rules should apply to improper state conduct whether the proceeding contemplates the deprivation of one's liberty or property.

Id.  See also, People v. Superior Court (Moraza), 210 Cal. App. 3d 592, 598-99, 600-601 (1989) (applying Cadillac Coupe to determine whether there had been a Fourth Amendment violation that required the exclusion of evidence in a forfeiture

---

[8] Indeed, its conclusion that the exclusionary rule does not apply to in rem civil forfeitures has been cited only once in a published state court opinion, People v. $17,522.08 United States Currency, 142 Cal. App. 4th 1076, 1083 (2006), which merely mentioned what the court in $241,600 had stated.

[9] Under the doctrine of stare decisis, this decision of the California Supreme Court was binding on the panel in $241,600, which exceeded its jurisdiction by failing to follow precedent.  Auto Equity Sales, Inc. v. Superior Court, 57 Cal.2d 450, 455 (1962) ("decisions of [the California Supreme Court] are binding upon and must be followed by all the state courts of California"); see also  Abelleira v. District Court of Appeal, 17 Cal.2d 280, 291 (1941).

1   case).  Surprisingly, the controlling opinion in <u>Cadillac Coupe</u> was neither

2   discussed nor even cited in <u>$241,600</u>.

3          Along with ignoring state decisional law, the court in <u>$241,600</u> also failed

4   to consider the express language of the statutes it was construing.  California

5   Health and Safety Code section 11491 states, "Nothing in this chapter [Cal. H&S

6   Code §§ 11470 et seq.] shall be construed to extend or change decisional law as it

7   relates to the topic of search and seizure."  Despite the statute's own conspicuous

8   contemplation that illegally seized evidence will remain subject to suppression in

9   forfeiture cases, the court in <u>$241,600</u> nevertheless got it wrong.

10         Instead of identifying the existing state law that bound it to apply the

11  exclusionary rule, the court in <u>$241,600</u> went on to misread and mischaracterize

12  the controlling federal case on the question, <u>One 1958 Plymouth Sedan v.

13  Pennsylvania</u>, 380 U.S. 693.  Since 1965, when <u>Plymouth Sedan</u> was decided,

14  there has never been a question in the federal courts as to the applicability of the

15  Fourth Amendment.  See, e.g. <u>United States v. Real Property at 22249 Dolorosa

16  Street</u>, 167 F.3d 509 (9th Cir. 1999); <u>John Bacall Imports Ltd. v. United States</u>, 412

17  F.2d 586 (9th Cir. 1969); <u>United States v. One 1971 Harley Davidson Motorcycle</u>,

18  508 F.2d 351 (9th Cir. 1974).  Nevertheless, because of a misreading of <u>Plymouth

19  Sedan</u> and an apparent failure to research the cases applying the exclusionary rule

20  to in rem civil forfeitures, the court in <u>$241,600</u> purported to narrow the United

21  States Supreme Court's holding into oblivion.[10]

22

23  ────────────────

24         [10] Its only authority for this was an isolated Maryland case, <u>Baltimore v.
    1995 Corvette</u>, 119 Md. App.  691 [706 A.2d 43] (1998) that was equally hostile

25  to the exclusionary rule.  That case, however, **was reversed the next year** by the
    Maryland Court of Appeals.  <u>One 1995 Corvette v. City Mayor and City Council

26  of Baltimore</u>, 353 Md. 114, 724 A.2d 680 (1999).  In reversing, the Court of

27  Appeals cited the abundance of state and federal cases that had followed <u>Plymouth
    Sedan</u>, 353 Md. at 123 n.5 & 124 n.6, and observed that it could find "no court

28  that completely rejects [Plymouth Sedan's] interpretation, as the [Maryland] Court

1      According to the opinion in $241,600, the forfeiture in <u>Plymouth Sedan</u> was

2  "in actuality a criminal proceeding" that "imposed upon the offender a monetary

3  fine or imprisonment, as well as forfeiture of the merchandise illegally

4  transported." <u>$241,600</u>, 67 Cal. App.4th at 1111.  In support of this proposition,

5  the court confused the civil <u>in rem</u> forfeiture statute that was considered in

6  <u>Plymouth Sedan</u> with the criminal statute in <u>Boyd v. United States</u>, 116 U.S. 616

7  (1886).  Although the Supreme Court in <u>Plymouth Sedan</u> placed heavy reliance on

8  its earlier decision in  <u>Boyd</u>, <u>Plymouth Sedan</u>, as the title suggests, was an <u>in rem</u>

9  forfeiture.  As the Maryland Court of Appeals found, <u>Boyd</u>'s discussion of

10  forfeiture actions and their "quasi-criminal" nature remains intact. <u>One 1995</u>

11  <u>Corvette</u>, 353 Md. at 119 n.3.  The Court in <u>Plymouth Sedan</u> noted that <u>Boyd</u> "was

12  not a criminal case but was a proceeding by the United States to forfeit 35 cases of

13  plate glass which had allegedly been imported without payment of the customs

14  duty." <u>Plymouth Sedan</u>, 380 U.S. at 697.

15      The court in <u>$241,600</u> also totally failed to note that in <u>Austin v. United</u>

16  <u>States</u>, 509 U.S. 602  (1993), the United States Supreme Court recognized that

17  civil forfeiture cases are punitive and involve penalties affixed to criminal acts.  In

18  <u>Austin</u>, the Supreme Court affirmed its view of the quasi-criminal, punitive nature

19  of civil forfeiture proceedings.  The intent in the forfeiture arena is "to impose a

20  penalty only upon those who are significantly involved in a criminal enterprise."

21  This is evidenced by the inclusion of innocent owner defenses in these statutes, as

22  well as by their inherent link to some type of offending behavior.

23      In this respect, the Court's decisions in <u>Plymouth Sedan</u> and <u>Austin</u>

24  followed the reasoning of <u>Boyd</u> while expressly disavowing that the forfeiture

25

26  of Special Appeals did." 323 Md. at 124.  Moreover, the Maryland Court of

27  Appeals rejected the same reasoning that the court in <u>$241,600</u> used to distinguish

<u>Plymouth Sedan</u> on the grounds that the proceeding was more civil than criminal.

28  323 Md. at 121.

must relate to a criminal proceeding.  In holding that an attempt to seize records constituted an unreasonable search and seizure within the meaning of the Fourth Amendment, the Court in <u>Boyd</u> stated:

> We are also clearly of the opinion that proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form, are in their nature criminal.... The information, though technically a civil proceeding, is in substance and effect a criminal one.... As, therefore, suits for penalties and forfeitures incurred by the commission of offenses against the law, are of this quasi-criminal nature, we think that they are within the reason of criminal proceedings for all the purposes of the fourth amendment of the constitution.

<u>Boyd</u>, 116 U.S. at 633-634.

At the time that <u>$241,600</u> was decided, the United States Supreme Court had reaffirmed its holding in <u>Plymouth Sedan</u> only five years earlier, <u>United States v. James Daniel Good Real Property</u>, 510 U.S. 43, 49 (1993), and the California Supreme Court had repeatedly affirmed its holding in <u>Cadillac Coupe</u> that the exclusionary rule applies in civil forfeiture proceedings, <u>Gikas v. Zolin</u>,6 Cal.4th 841, 869 (1993); <u>Emslie v. State Bar</u>, 11 Cal.3d 210, 226 (1974);<u>Lake County Mental Health Department v.Susan T.</u>, 8 Cal.4th 1005, 1014 (1994) (noting that the California Supreme Court had reached the same conclusion as the United States Supreme Court in <u>Plymouth Sedan</u>, only it did so one year earlier).

As a conclusion that has never been followed and was based on a quickly reversed Maryland case, the <u>dicta</u> from <u>$241,600</u> is clearly erroneous.  By disregarding <u>Plymouth Sedan</u>, <u>Austin</u> and <u>Boyd</u>, the opinion in <u>$241,600</u> is completely contrary to more than a century's precedent from the United States Supreme Court as well as the decision of the California Supreme Court in <u>Cadillac Coupe</u>.  Trying to justify its decision by relying on an inapposite tax case, <u>United</u>

1    States v. Janis, 428 U.S. 433 (1976), the Court of Appeal in Riverside was

2    unaware that even in the tax context, evidence illegally seized by the law

3    enforcement agency primarily involved with tax collection (there, the  Internal

4    Revenue Service) is subject to exclusion.  G.M. Leasing Corp. v. United States,

5    429 U.S. 338 (1977).

6         Janis, which was premised on the interaction of separate sovereigns, 428

7    U.S. at 453-454, has no relevance in the context of a forfeiture, like this one,

8    where there has been joint federal and state participation and the local agency

9    responsible for illegal search and seizure is entitled to 80% of the net proceeds

10   from a successfully prosecuted forfeiture.  $186,416.00,  590 F.3d at 953.  The

11   holding in Janis has no application where the same sovereign seeks to use

12   evidence that its own authorities illegally seized.

13        The Janis opinion did not emphasize the civil nature of the tax

14        assessment proceeding.  Rather, the Court reasoned that the deterrence

15        function of the rule would not be served by suppressing evidence

16        illegally seized by a "sovereign" different from the one seeking to use

17        it.  Of course, this rationale does not bar invocation of the rule in cases

18        of "intrasovereign" violations, such as Pizzarello v. United States, 408

19        F.2d 579 (2d Cir.), cert. denied, 396 U.S. 986, 90 S. Ct. 481, 24 L. Ed.

20        2d 450 (1969).  See 428 U.S. at 456 & n.32, 96 S. Ct. 3021; 1977

21        B.Y.U.L. Rev. 211, 227.  Indeed, the analysis in Janis indicates that the

22        deterrence rationale would have significance in an "intrasovereign" case

23        like the one before us.

24   Savina Home Industries, Inc. v. Secretary of Labor, 594 F.2d 1358 (10th Cir.

25   1979); see also G.M. Leasing, 429 U.S. 338 .  Accordingly, even in its

26   understanding of Janis, the court in $241,600 completely missed the mark.

27        There is no basis for the conclusion by the Riverside Court of Appeal that it

28   is adequate deterrence that police officers would be punished by the exclusion of

1    evidence in a separate criminal trial based on the same evidence as the forfeiture

2    case.  $241,600, 67 Cal. App. 4th at 1113.  Not only does this reasoning presume

3    that there will be an underlying state criminal action,[11] it also ignores that

4    forfeiture law actually creates a reward for seizing property by returning proceeds

5    to the law enforcement entity.

6         There is no forfeiture exception to the Fourth Amendment.  See, e.g.,

7    McCormick, 502 F.2d at 285-86 (9th Cir. 1974); see also United States v. Spetz,

8    721 F.2d 1457 (9th Cir.1983), abandoned on other grounds in United States v.

9    Bagley, 765 F.2d 836 (9th Cir. 1985).  Neither Congress nor the State Legislature

10   has ever attempted to establish such an exception.  See, Cal. Health & Saf. Code §

11   11491; Almeida-Sanchez v. United States, 413 U.S. 266, 272 (1973).  Similarly,

12   there is no civil or criminal limitation on the Fourth Amendment.  Marshall v.

13   Barlow's Inc., 436 U.S. 307, 312 (1978).  The Government may not seize an

14   individual's person, house, papers, or effects and hold them in custody for trial

15   without a judicial determination of probable cause.  Gerstein v. Pugh, 420 U.S.

16   103, 118-119 (1975); Bernard v. City of Palo Alto, 699 F.2d 1023, 1025 (9th Cir.

17   1983); Stepmann v. City and County of San Francisco, 557 F.2d 1338, 1334 (9th

18   Cir. 1977).  Clearly, the state has no more latitude to authorize a violation of the

19   Fourth Amendment than Congress.  McCormick, 502 F.2d at 286 (citing Almeida-

20   Sanchez, 413 U.S. at 272).

21

22

_____

23        [11] There was no underlying criminal case in $241,600 and no evidence to
24   sustain a prosecution.  The primary evidence was that the defendant property was
     a large sum of money and that a dog had alerted to the trunk of the claimant's car
25   where the money was located.  The claimant contended he had found the briefcase
26   containing the money in a restroom and "[t]he only fact directly linking the money
     in some way to drugs was the canine 'hit' which occurred after claimant found the
27   money and [the police] had detained claimant."  $241,600, 67 Cal. App.4th at
28   1114.

Forfeiture cases are unlike other civil cases in that they are initiated by a police seizure of property.  When such intrusions into individual privacy and personal and real property are unlawful, the forfeiture action is tainted by unconstitutional conduct from its inception.  Significantly, the entity that seizes the property, prosecutes the forfeiture and seeks to profit from it.  To allow illegally seized evidence to be admitted under these circumstances is to directly permit the state and its officers to profit from their unlawful conduct.  Where the seizure of property is the pivotal aspect of a forfeiture case, it is especially important that victims of illegal searches have recourse to the object to the validity of the entry, search and seizure of the property.  As a matter of federal constitutional law, the Fourth Amendment rights at issue here can not be altered by state forfeiture law and certainly cannot be abrogated by the Riverside Court of Appeal.

## E.   Releasing the Property to the State Would Be Improper Under Rule 41, Fed. R. Civ. P.

Pursuant to Rule 41, Fed. R. Civ. P., a plaintiff must obtain a court order to dismiss a case once the opposing party has filed an answer.  Mr. Felix has filed an answer in this case and has affirmatively raised the Fourth Amendment as a bar to forfeiture.  Moreover, the government has conceded that "the United States Attorney's Office has determined that a federal forfeiture action against this asset may no longer be possible due to the circumstances surrounding the arrest of David Antonio Felix and the subsequent discovery of the targeted currency."  Williston Affidavit at ¶ 4.  As Officer Willison explains in his affidavit, the only reason that the state believes that "the issues of concern to the United States Attorney's Office are not applicable to a state forfeiture proceeding" is because of the anomalous and never followed conclusion in $241.600, 67 Cal. App. 4th at 1113, that the "application of the exclusionary rule in civil forfeiture actions is unnecessary."

Rule 41, however, requires that when the Court enters a dismissal after an answer has been filed, it must do so on terms that the court considers proper.  Such terms would clearly not be proper and would be an abuse of discretion when the State admits that its intent is to ignore the Fourth Amendment violation that took place and evade the application of the exclusionary rule.  Because the United States and its privy, the Azusa Police Department, chose to seek forfeiture in this Court, claimant's remedy for the government's unconstitutional seizure must be in federal court. The violation that occurred cannot be remedied by litigation in a totally separate state jurisdiction, particularly one that openly admits that it intends to ignore the constitutional violation that is the cause of the government's motion to dismiss with prejudice.  The underlying illegal conduct should not be rewarded with the initiation of new state court proceedings.

## III.

## CONCLUSION

For the foregoing reasons, claimant respectfully requests that the Court dismiss the Complaint with Prejudice and, upon doing so, that it release the defendant property, together with interest thereon, to claimant.

Dated:   May 21, 2010          Respectfully submitted,

LAW OFFICES OF ANDRES Z. BUSTAMANTE
ANDRES Z. BUSTAMANTE

JANET SHERMAN
SHERMAN & SHERMAN
A Professional Law Corporation


By:    /s/ Janet Sherman
       _____
       JANET SHERMAN
       Attorneys for Claimant
       David Antonio Felix-Tavizon